UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

BRONX HARBOR HEALTH CARE COMPLEX, INC., d/b/a Kings Harbor Multicare Center, *et al.*,[1]

Plaintiffs,

v.

1:24-CV-1573
(GTS/PJE)

JAMES V. McDONALD, M.D., M.P.H., as Commissioner of Health of the State of New York, or his predecessor or successor in office,

Defendant.

---

APPEARANCES: | OF COUNSEL:

HARTER, SECREST & EMERY LLP
Counsel for Plaintiffs
1600 Bausch and Lomb Place
Rochester, NY 14604

CHRISTINA M. DEATS ESQ.
FRANCIS P. GREENE, ESQ.

HON. LETITIA A. JAMES
Attorney General for the State of New York
Counsel for Defendant
300 South State Street, Suite 300
Syracuse, NY 13202

PATRICK R. BLOOD, ESQ.
JOHN C. JENSEN, ESQ.
KYLE W. STURGESS, ESQ.
Assistant Attorneys General

GLENN T. SUDDABY, United States District Judge

**DECISION and ORDER**

Currently before the Court, in this civil rights action filed by the operators of 185 for-profit nursing homes located in and licensed by the State of New York ("Plaintiffs") against Commissioner of Health for the State of New York James V. McDonald ("Defendant"), are the

---

[1] As a result of the filing of an Amended Complaint on October 12, 2026, (to which amendment Defendant consented), this action now encompasses all 185 plaintiffs listed in that Amended Complaint. (Dkt. Nos. 69, 71.)

following two motions: (1) Defendant's post-Notice of Appeal motion, purportedly pursuant to Fed. R. Civ. P. 60(b)(1) and 60(b)(5), for relief from the Court's Decision and Order of December 30, 2025, issuing a preliminary injunction; and (2) Plaintiffs' purported "cross-motion to enforce [the] preliminary injunction." (Dkt. No. 44 [docketed by defense counsel as a "motion for reconsideration"]; Dkt. No. 53.) For the reasons set forth below, the Court grants Defendant's motion and denies Plaintiffs' cross-motion.

## I. RELEVANT BACKGROUND

### A. Relevant Procedural History

On December 30, 2025, the Court entered a Decision and Order granting Plaintiffs' motion for a preliminary injunction. (Dkt. No. 39.) On January 13, 2026, Defendant filed a Notice of Appeal from that Decision and Order. (Dkt. No. 41.) On January 15, 2026, Defendant filed the motion at issue in this Decision and Order. (Dkt. No. 44.) On February 4, 2026, the Second Circuit stayed Defendant's appeal pending resolution of his motion. (Dkt. No. 51.) Plaintiffs filed their cross-motion on February 5, 2026. (Dkt. Nos. 52, 53.)

### B. Parties' Arguments on Defendant's Motion

#### 1. Defendant's Memorandum of Law

Generally, in his memorandum of law, Defendant asserts four arguments. (Dkt. No. 44, Attach. 1.) First, Defendant argues, the Court should reconsider its Decision and Order issuing a preliminary injunction based on a "mistake" under Fed. R. Civ. P. 60(b)(1), specifically, Defendant's mistake in not being alert to, and notifying the Court of, "a major development in decisional law" with regard to Plaintiffs' due process claim, which occurred 27 days after he filed his opposition to Plaintiffs' motion for a preliminary injunction: the Supreme Court's decision in *Medina v. Planned Parenthood S. Atl., et al.*, 606 U.S. 357 (2025). (*Id.* at 8-11.)

Defendant argues that *Medina* renders Plaintiffs' success on the merits of their due process claim unlikely, by effectively barring due process challenges to 42 U.S.C. § 1396a(a)(13)(A) by private parties due to the fact § 1396a(a)(13)(A) does not clearly and unambiguously confer an individual right. (*Id.*) Indeed, Defendant argues, even before the issuance of *Medina*, United States District Judge David N. Hurd of this Court found that § 1396a(a)(13)(A) does not confer an individual substantive right. (*Id.* at 11 [citing *In re NYAHSA Litigation*, 318 F. Supp. 2d 30, 38-39 (N.D.N.Y. 2004), *affirmed*, 444 F.3d 147 (2d Cir. 2006) (per curiam)].)

Second, Defendant argues, in any event, the Court should reconsider its preliminary injunction based on another "mistake" under Fed. R. Civ. P. 60(b)(1), specifically, the Court's mistake in finding that reimbursement for *all* ongoing capital costs had been removed from plaintiffs' Medicaid rates through "line 60" of their 2025 rate sheets when, instead, only reimbursement for residual equity had been removed through "line 60." (*Id.* at 11-14.)

Third, Defendant argues, in any event, the Court should reconsider its preliminary injunction because continuing to enforce it "is no longer equitable" under Fed. R. Civ. P. 60(b)(5), given the above-referenced significant change in law created by *Medina*. (*Id.* at 14-15.)

Fourth and finally, Defendant argues, in the alternative, the Court should stay its preliminary injunction pending appeal, because (a) he has made a strong showing that he is likely to succeed on the merits of Plaintiff's due process claim, and (b) the public interest strongly supports allowing him to enforce the legislature's elimination of Medicaid "residual equity reimbursement" payments as part of the state budget process. (*Id.* at 15.)

### 2. Plaintiffs' Opposition Memorandum of Law

Generally, in their opposition memorandum of law, Plaintiffs assert five arguments.

(Dkt. No. 52.) First, Plaintiffs argue, as a threshold matter, Defendant's motion should be rejected as both improper and untimely. (*Id*. at 9-11.)[2] More specifically, Plaintiffs argue that Defendant's motion is improper in that, because Defendant filed an appeal before a motion for reconsideration, the Court retains only the jurisdiction necessary to deny the motion for reconsideration and does not retain the jurisdiction necessary to *grant* the motion for reconsideration. (*Id*. at 9-10.) Moreover, Plaintiffs argue that, in any event, Defendant's motion is untimely in that, pursuant to the fourteen-day deadline set by Local Rule 60.1 of the District's Local Rules of Practice, it was due by the end of January 13, 2026, but was inexplicably filed on January 15, 2026. (*Id.* at 10-11.)

Second, Plaintiffs argue, in any event, the Supreme Court's decision in *Medina* does not negate the clear right granted under 42 U.S.C. § 1396a(a)(13)(A), because (a) Defendant's reliance on *Medina* is untimely and unfair, and (b) in any event, *Medina* actually supports the Court's preliminary injunction by endorsing "*Talevski*" as "the only reliable measure." (*Id*. at 11-17.) More specifically, Plaintiffs argue that, at the very least, Defendant should have raised any issue presented by *Medina* either in a supplemental response brief or at the preliminary injunction hearing, and that Plaintiffs have relied to their detriment on Defendant's apparent concession at the hearing that providers have a right to be informed of the methodologies and justifications for their Medicaid rates. (*Id*. at 11-12.) Alternatively, Plaintiffs argue that, in *Medina*, the Supreme Court characterized Congress' rights-creating statutory language at issue in *Health and Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166 (2023), as "supply[ing] the

---

[2] Page citations in this Decision and Order refer to the screen numbers on the Court's Case Management / Electronic Case Filing ("CM/ECF") System, not to the page numbers stated on the documents contained therein.

only reliable yardstick against which to measure whether spending-power legislation confers a privately enforceable right"; and, here, Congress used rights-creating language in 42 U.S.C. § 1396a(a)(13)(A) similar to the rights-creating language used in *Talevski*. (*Id*. at 12-17.)

Third, Plaintiffs argue, Defendant's argument concerning the removal of residual equity is irrelevant, because, in its preliminary injunction, the Court expressly stated that the preliminary injunction does not grant relief in relation to residual equity; rather, it grants relief in relation to the Department of Health's decision to pay Plaintiffs $0 for ongoing capital improvements on line 60 of their Medicaid rate sheets. (*Id*. at 17-19.)

Fourth, Plaintiffs argue, Defendant's alternative request for a stay should be denied as both improper and without merit. (*Id*. at 20-21.) More specifically, Plaintiffs argue that Defendant's request for a stay is improper because, despite the fact that the request constitutes a "motion," it is not referenced in Defendant's Notice of Motion, which seeks relief only under Fed. R. Civ. P. 60. (*Id*. at 20.) Moreover, Plaintiffs argue that, in any event, Defendant's request for a stay is without merit for three reasons: (a) Defendant's request is based wholly on *Medina*, which does not in fact tilt the scales against Plaintiffs' likelihood of success on their due process claim; (b) even if *Medina* did so tilt the scales, Plaintiffs remain likely to succeed on their equal protection claim for the reasons stated in their cross-appeal regarding that claim (i.e., that there must be some rational link between the criteria applied to differentiate between groups and the goal of protecting the public fisc); and (c) in any event, although another relevant factor is whether issuance of the stay will substantially injure the other parties interested in the proceeding, Defendant fails to address the clear findings of harm to Plaintiffs' residents that would be caused by a stay (specifically by allowing the Department of Health to claw back capital funds paid to Plaintiffs between April 2020 and December 2025, or to cease funding

necessary capital improvements for rate year 2026, pending resolution of the appeal). (*Id*. at 20-21.)

Fifth and finally, Plaintiffs argue that, if the Court finds merit to Defendant's motion for reconsideration, the Court should still enforce the preliminary injunction because the Court erred in finding that Plaintiffs have not demonstrated a likelihood of success on the merits of their equal protection claim. (*Id*. at 20-21, n.10.) More specifically, Plaintiffs argue that there is no rational link between the criteria applied to differentiate between groups and the goal of protecting the public fisc. (*Id*.)

**3. Plaintiffs' Supplemental Letter-Brief**

Generally, in their supplemental letter-brief (which was requested by the Court), Plaintiffs assert four arguments. (Dkt. No. 60.) First, Plaintiffs argue, the claim in question is not for violation of a substantive right to a reasonable and adequate reimbursement rate under the repealed Boren Amendment, but a claim for violation of a public process right to notice and comment under 42 U.S.C. § 1396a(a)(13)(A). (*Id*. at 2-4.) Furthermore, Plaintiffs argue, the case of *In re NYAHSA Litigation*, 318 F. Supp. 2d 30 (N.D.N.Y. 2004), *affirmed by N.Y. Ass'n of Homes & Servs. for the Aging, Inc. v. DeBuono*, 444 F.3d 147 (2d Cir. 2006), is distinguishable, because it was a case about the substantive rights granted under the Boren Amendment, not the public process rights that followed the Amendment's repeal. (*Id*. at 2.) Similarly, Plaintiffs argue that *Springfield Hosp. v. Hofmann*, 488 F. App'x 534 (2d Cir. 2012), is distinguishable because the case's challenge to Vermont's notice-and-comment obligations under 42 U.S.C. § 1396a(a)(13)(A) was really just "a back-door substantive challenge to the hospital's rates." (*Id*. at 3.)

Second, Plaintiffs argue, their position that they possess an enforceable right under 42

U.S.C. § 1983, is further strengthened by the fact that the case relied on by Defendant – *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357 (2025) – actually affirms the test set forth in *Health & Hosp. Corp. v. Talevski*, 599 U.S. 166, 171 (2023), which relies on *BT Bourbonnais Care, LLC v. Norwood*, 866 F.3d 815, 822 (7th Cir. 2017). (*Id.* at 4-5.) In this regard, Plaintiffs argue that *Medina* overturned both *N.Y. Ass'n of Homes & Servs. for the Aging, Inc. v. DeBuono*, 444 F.3d 147 (2d Cir. 2006) (per curiam), and *Springfield Hosp. v. Hofmann*, 488 F. App'x 534 (2d Cir. 2012). (Id. at 3-5 & n.3.)

Third, Plaintiffs argue, an Order granting them relief under Fed. R. Civ. P. 60 concerning this Court's equal protection determination is appropriate for the following reasons: (a) the Court denied Plaintiffs injunctive relief on their equal protection claim because the State asserted that its goal in eliminating funding for ongoing capital improvements for Plaintiffs was to save money; (b) when legislation targets a certain class for budgetary savings or to generate revenue, the targeting itself must have some rational relationship to the underlying purpose for the classification, which must reflect pre-existing differences between the classes (and not rely on newly created ones); and (c) here, age (especially the specific age of 40 years) is not a pre-existing difference that may be rationally considered, because all nursing homes, regardless of age, require funding for ongoing capital reimbursement, as Defendant's witnesses agreed on pages 146 and 185 of the Hearing Transcript. (*Id.* at 5-7.)

Fourth and finally, Plaintiffs argue, an Order granting them relief under Fed. R. Civ. P. 60 is appropriate without a motion from them, because the Court may consider granting relief under Fed. R. Civ. P. 60 *sua sponte* as long as notice and an opportunity to be heard have been afforded, which they have been here. (*Id.* at 7-8.)

**4. Defendant's Reply Letter-Brief**

Generally, in their reply letter-brief, Defendant asserts four arguments. (Dkt. No. 61.) First, Defendant argues, any claim for an enforceable public process right to notice and comment under 42 U.S.C. § 1396a(a)(13)(A) is barred by *N.Y. Ass'n of Homes & Servs. for the Aging, Inc. v. DeBuono*, 444 F.3d 147 (2d Cir. 2006), and *Springfield Hosp. v. Hofmann*, 488 F. App'x 534 (2d Cir. 2012), both of which asserted claims similar to Plaintiffs' claim for a violation of their public process right to notice and comment under 42 U.S.C. § 1396a(a)(13)(A) here. (*Id*. at 2-3.)

Second, Defendant argues, any claim for an enforceable public process right to notice and comment under 42 U.S.C. § 1396a(a)(13)(A) is barred by *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357 (2025), for the following reasons: (a) *Medina* provides that the creation of a statutory right to challenge public funding statutes must be "clear and unambiguous" by using "rights-creating terms" and displaying an "unmistakable focus" on individuals like the plaintiff, which is a "stringent" and "demanding" test; (b) here, Plaintiffs cite no "clear and unambiguous" or "rights-creating" language supporting a "public rights" cause of action under Section 1396a(a)(13)(A); (c) in any event, *Medina* further explained that, "even for the rare statute that satisfies [the above-described test], . . . a § 1983 action may still not be available if Congress has displaced § 1983's general cause of action with a more specific remedy"; and (d) here, the appropriate remedy for an allegedly wrongful deprivation of Medicaid funds is for the federal government – tasked with overseeing administrators such as Defendant – to threaten withdrawal of federal funds. (*Id*. at 3-4.)

Third, Defendant argues, *Bourbonnais Care, LLC v. Norwood*, 866 F.3d 815, 822 (7th Cir. 2017), does not compel a different result, because (a) the relevant aspect of that case was overturned by *Medina*, (b) the case is contrary to Second Circuit authority, and (c) in any event,

it is distinguishable in that it permitted a public process claim only to the extent that such a claim sought "prospective, nonmonetary relief" and here Plaintiffs seek substantial monetary relief. (*Id*. at 4.)

Fourth and finally, Defendant argues, Plaintiffs are not entitled an Order granting them relief under Fed. R. Civ. P. 60 concerning this Court's equal protection determination for the following reasons: (a) Plaintiffs offer no overlooked authorities, changes in controlling law, or any specific basis enumerated in Fed. R. Civ. P. 60 that would entitle them to relief; and (b) there is no dispute that decision was in fact a cost-saving measure, which in itself constitutes a legitimate government interest. (*Id*. at 4.)

## II. GOVERNING LEGAL STANDARDS

### A. Legal Standard Governing a Motion Under Fed. R. Civ. P. 60(b)

Rule 60(b) of the Federal Rules of Civil Procedure permits a party to seek relief from "a final judgment, order, or proceeding" under a limited set of circumstances. Fed. R. Civ. P. 60(b). As applicable here, a party may seek such relief based on "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Granted, "a 'mistake' under Rule 60(b)(1) includes a judge's errors of law." *Kemp v. United States*, 596 U.S. 528, 533-34 (2022). However, "[m]ere dissatisfaction in hindsight with choices deliberately made by counsel is not grounds for finding . . . [a] mistake . . . necessary to justify Rule 60(b)(1) relief." *Nemaizer v. Baker*, 793 F.2d 58, 62 (2d Cir. 1986). A party may also seek such relief based on the fact that "the judgment has been satisfied, released, or discharged," "[the judgment] is based on an earlier judgment that has been reversed or vacated," or "applying [the judgment] prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5).

Properly construed, a motion to reconsider a preliminary injunction does not arise under

Fed. R. Civ. P. 60(b). *See New Falls Corp. v. Soni Holdings LLC*, No. 21-865-cv, 2022 WL 2720517, at *1, n.2 (2d Cir. 2021) ("Defendants moved for reconsideration [of an order entering a preliminary injunction] under Rule 60(b), which was procedurally defective because the preliminary injunction was not a final order."); Charles A. Wright & Arthur R. Miller, 11 *Federal Practice and Procedure* § 2852 n.7 (3d ed. Sept. 2025) ("A preliminary injunction is not a final judgment, order, or proceeding that may be addressed by a motion for relief from judgment.").[3]

Granted, some courts have interpreted Fed. R. Civ. P. 60(b)(5) as extending to motions to

---

[3] *See, e.g., Peters v. Caton Towers Owners Corp.*, 25-CV-4176, 2025 WL 2822614, at *2 (E.D.N.Y. Oct. 5, 2025) (Kovner, J.) ("An order denying a motion for a preliminary injunction is not a final judgment, so Rule 60(b) does not apply."); *Augustin v. Digirolamo*, 25-CV-03332, 2025 WL 2689598, at *1 n.4 (E.D.N.Y. Sept. 19, 2025) (Merle, J.) ("[P]laintiff's motion cannot be construed as one for relief from entry of a final judgment or order, . . . as a preliminary injunction is not a final judgment, order, or proceeding") (internal quotation marks omitted); *Komatsu v. City of New York*, 23-CV-5406, 2023 WL 5951916, at *1, n.1 (S.D.N.Y. July 31, 2023) (Swain, J.) ("An order granting or denying a preliminary injunction or temporary restraining order is not a final judgment, order, or proceeding that may be addressed by a motion for relief from judgment.") (internal quotation marks omitted); *Jones v. United States Postal Serv.*, 20-CV-6516, 2020 WL 6554904, at *8 (S.D.N.Y. Sept. 29, 2020) (Marrero, J.) ("A preliminary injunction is not a final judgment or order, and therefore, Rule 60(b) is inapplicable . . . ."), *accord, Stern v. Highland Lake Homeowners*, 18-CV-4622, 2021 WL 1164718, at *4 (S.D.N.Y. March 26, 2021) (Román, J.); *Am. ORT, Inc. v. ORT Israel*, 07-CV-2332, 2009 WL 233950, at *3 n.2 (S.D.N.Y. Jan. 22, 2009) (Sullivan, J.) ("The motion cannot be construed as one for relief from entry of a final judgment or order pursuant to Rule 60(b), as a preliminary injunction is not a final judgment, order, or proceeding that may be addressed by a motion for relief from judgment.") (internal quotation marks omitted); *Toth ex rel. Toth v. Bd. of Educ., Queens Dist. 25*, 07-CV-03239, 2007 WL 3034078, at *1 n.1 (E.D.N.Y. 2007) (Townes, J.) (explaining that a motion for reconsideration of an order denying preliminary relief is properly made pursuant to Fed. R. Civ. P. 59(e) because an order "granting, refusing, or refusing to dissolve an injunction" is appealable, and thus "an interlocutory order denying a preliminary injunction is a judgment within the meaning Rule 59(e)"); *Nnebe v. Daus*, 06-CV-04991, 2006 WL 2309588, at *1 (S.D.N.Y. Aug.7, 2006) (Karas, J.) ("Both a TRO and a preliminary injunction are interlocutory, thus neither is a final judgment, order, or proceeding. . . . Rule 60 is inapplicable in this case.") (internal quotation marks and citation omitted).

*modify* a preliminary injunction. *See Bd. of Governors of Fed. Reserve Sys. v. Pharaon*, 140 F.R.D. 642, 648 (S.D.N.Y. 1991) ("Although by its terms Rule 60(b)(5) concerns final orders, it has been interpreted to extend to modifications of preliminary injunctions."). For the sake of brevity, the Court will not linger on the fact that, when such interpretations occur, typically the preliminary injunction to be modified has been pending for months if not years before modification was requested (often actually being part of a consent decree or final order).[4]

More important is the fact that a motion to *modify* a preliminary injunction is not the same as a motion to *reconsider* a preliminary injunction. *See Lashify, Inc. v. Qingdao Network Tech. Co*., Ltd., 25-CV-4183, 2026 WL 112022, at *4 (S.D.N.Y. Jan. 15, 2026) ("The Circuit has drawn this careful distinction in order to prevent the losing party on a motion for a preliminary injunction from indefinitely extending the time for appeal under the guise of filing a motion for

---

4 *See, e.g., Pharaon*, 140 F.R.D. at 643, 648 (considering a request to modify a "Temporary Restraining Order" that had been issued and modified by stipulation of the parties more than three months earlier); *Consolidated Gold Fields PLC v. Anglo American Corp. of South Africa, Ltd*., 713 F. Supp. 1455, 1455 (S.D.N.Y.1989) (considering a request to modify a preliminary injunction that had been issued six months earlier); *accord, Halo Optical Prods., Inc. v. Liberty Sport, Inc*., 14-CV-0282, 2017 WL 4011261, at *3 (N.D.N.Y. Sept. 11, 2017) (D'Agostino, J.) (considering a request to modify a preliminary injunction that had been issued more than three years earlier); Charles A. Wright & Arthur R. Miller, 11A *Federal Practice and Procedure* §§ 2863, 2961 (3d ed. Sept. 2025) (indicating that, although by its terms Fed. R. Civ. P. 60[b][5] concerns final orders, it has sometimes been interpreted to extend to modifications of preliminary injunctions, citing cases often involving preliminary injunctions pending more than years before modification was requested, if not preliminary injunctions that were a part of consent decrees or final orders). The Court acknowledges that the Second Circuit has observed that "[t]he third clause of subsection (5), added by amendment in 1948, codified a power that courts had long been exercising: to modify their decrees or injunctions in light of changed circumstances." *Tapper v. Hearn*, 833 F.3d 166, 170 (2d Cir. 2016) (citations omitted). However, it is worth noting that the case relied on by the Second Circuit for this point of law appears to have regarded an injunction that was more akin to a permanent injunction than a preliminary one, in that it appears to have been part of a final decree (directing the abatement or elevation of a bridge) that had been fully litigated and entered after a complete hearing on the merits. *Tapper*, 833 F.3d at 170 (citing *Pennsylvania v. Wheeling & Belmont Bridge Co*., 59 U.S. 421 [1856]).

modification.”). Rather, a motion to modify a preliminary injunction asks the question of whether, based on events which occurred subsequent to the entrance of the order, the preliminary injunction should be modified or dissolved to achieve its original purpose or to avoid manifest injustice. *See Lashify, Inc.*, 2026 WL 112022, at *4 (“A motion to modify or dissolve [an injunction] does not ask the question whether the injunction should have been granted in the first place. It asks whether based on events which occurred subsequent to the entrance of the order, . . . the injunction should be modified or dissolved to achieve its original purpose or to avoid manifest injustice.”) (internal quotation marks and citation omitted). By contrast, a motion to reconsider a preliminary injunction asks the question of “whether the injunction should have been granted in the first place based on facts as they existed at the time the injunction was entered,” and “is to be brought under Rule 59(e) and judged by the criteria applicable under that Rule.” *Id.* at *5.

**B. Legal Standard Governing a Motion Under Fed. R. Civ. P. 59(e)**

A court may grant a motion under Fed. R. Civ. P. 59(e) “only when the [movant] identifies [1] an intervening change of controlling law, [2] the availability of new evidence, or [3] the need to correct a clear error or prevent manifest injustice.’” *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142 (2d Cir. 2020) (internal quotation marks and citations omitted). This standard is “strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked.” *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 [2d Cir. 1995]). “It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple.” *Analytical Surveys,*

*Inc.*, 684 F.3d at 52 (internal quotation and citations omitted).

## III. ANALYSIS

### A. Whether Defendant's Motion and Plaintiffs' Cross-Motion Are Governed by Fed. R. Civ. P. 60(b) or Fed. R. Civ. P. 59(e)

For the reasons stated above in Part II of this Decision and Order, the Court finds that Defendant's motion is properly construed as one for reconsideration under Fed. R. Civ. P. 59(e). The Court further excuses the untimeliness of that motion under Local Rule 60.1 of the District's Local Rules of Practice because of the complexity and importance of the issues presented in the motion (and alternatively because the Court could entertain those issues *sua sponte*, given the existence of adequate notice and an opportunity to be heard). In any event, even if the Court were to apply Fed. R. Civ. P. 60(b)(1) to Defendant's motion, the Court would reach the same results for the reasons stated below in Parts III.B. and III.C. of this Decision and Order.

As for Plaintiffs' "cross-motion to enforce [the] preliminary injunction," Plaintiffs cite no procedural rule giving rise to such a motion, as required by the District's Local Rules of Practice. *See* N.D.N.Y. L.R. 7.1(b)(1) ("When a moving party makes a motion based upon a rule or statute, the moving party must specify in its moving papers the rule or statute upon which it bases its motion."). (Dkt. No. 53.) Moreover, a request to deny an opponent's motion is not a cross-motion, but simply an opposition.[5] Rather, because of Plaintiffs' arguments regarding

---

5 *See, e.g., Kan.-Neb. Nat. Gas Co. v. City of St. Edward, Neb.*, 135 F. Supp. 629, 633 (D. Neb. 1955) ("The defendants in each case served and filed a motion to deny motion of plaintiff for temporary injunction. Such a pleading is of no real service. A motion to deny an antecedent motion already set for hearing accomplishes nothing that could not be done by a simple appearance in resistance to the earlier motion. Reasonable professional case is laudable. When it degenerates into illogical timidity it approaches the status of absurdity."); *Mojica v. Murphy*, 17-CV-0324, 2020 WL 1149922, at *11, n.14 (N.D.N.Y. Jan. 23, 2020) (Lovric, M.J.) ("The denial of an opponent's motion is not an appropriate request for relief in a motion under Fed. R. Civ. P. 7(b) because such a denial may be obtained through merely successfully resisting the opponent's

their equal protection claim, the Court liberally construes Plaintiffs' cross-motion as one for reconsideration under Fed. R. Civ. P. 59(e).[6]

**B. Whether Prior Rulings by the Second Circuit Foreclose Plaintiffs' Claim of a Public Process Right to Notice and Comment Under 42 U.S.C. § 1396a(a)(13)(A) and 42 U.S.C. § 1983**

Generally, the Court rejects all of the arguments for reconsideration presented in Defendant's memorandum of law and reply letter-brief except for their argument that, even before the issuance of *Medina*, the Second Circuit twice held that 42 U.S.C. § 1396a(a)(13)(A) does not confer an enforceable public process right to notice and comment under 42 U.S.C. § 1396a(a)(13)(A), in the cases of *N.Y. Ass'n of Homes & Servs. for the Aging, Inc. v. DeBuono*, 444 F.3d 147 (2d Cir. 2006), and *Springfield Hosp. v. Hofmann*, 488 F. App'x 534 (2d Cir. 2012). *See, supra,* Parts I.B.1. and I.B.4. of this Decision and Order. For this reason, the Court answers the question stated above in subheading III.B. of this Decision and Order in the affirmative. To that reason, the Court adds the following analysis.

Plaintiffs argue that *In re NYAHSA Litigation*, 318 F. Supp. 2d 30 (N.D.N.Y. 2004), *affirmed by N.Y. Ass'n of Homes & Servs. for the Aging, Inc. v. DeBuono*, 444 F.3d 147 (2d Cir. 2006) (per curiam) – like *Springfield Hosp. v. Hofmann*, 488 F. App'x 534 (2d Cir. 2012) – is distinguishable, because Plaintiffs' claim in question is not for violation of a substantive right to a reasonable and adequate reimbursement rate under the repealed Boren Amendment, but a claim

---

motion.") (internal quotation marks omitted; collecting cases), report-recommendation adopted by 2020 WL 114096 (N.D.N.Y. March 9, 2020) (Hurd, J.).

[6] The Court finds this cross-motion to be timely for each of two alternative reasons: (1) it was properly combined with Plaintiffs' response to Defendant's motion (in compliance with N.D.N.Y. L.R. 7.1[c]), even though it was redundantly re-filed five minutes after that response; and (2) the Court could entertain the issue presented in the cross-motion *sua sponte*, given the existence of adequate notice and an opportunity to be heard.

for violation of a public process right to notice and comment under 42 U.S.C. § 1396a(a)(13)(A). (Dkt. No. 60, at 1-2.)

As a result, the question before the Court becomes whether the two above-cited actions involved claims that the defendant failed to follow the process of methodology/justification disclosure and review/comment opportunity required by 42 U.S.C. § 1396a(a)(13)(A). *See* 42 U.S.C. § 1396a(a)(13)(A) (providing for "public process for determination of rates of payment under the plan for hospital services, nursing facility services, and services of intermediate care facilities for the mentally retarded under which--(i) proposed rates, the methodologies underlying the establishment of such rates, and justifications for the proposed rates are published, (ii) providers, beneficiaries and their representatives, and other concerned State residents are given a reasonable opportunity for review and comment on the proposed rates, methodologies, and justifications, (iii) final rates, the methodologies underlying the establishment of such rates, and justifications for such final rates are published . . .").

Plaintiffs argue that the first of the two above-cited actions – *In re NYAHSA Litigation*, 318 F. Supp. 2d 30 (N.D.N.Y. 2004) – "is and always was a case about the substantive rights granted under the Boren Amendment, not the public process rights that followed the Amendment's repeal." (Dkt. No. 60, at 2.) However, before proceeding to an analysis of the claims presented in the six cases consolidated in *In re NYAHSA Litigation*, 318 F. Supp. 2d 30 (N.D.N.Y. 2004), Plaintiffs weaken their own argument by arguing that "the *In re NYAHSA* plaintiffs continued to frame their case as one *primarily* challenging the sufficiency of the underlying rates, rather than the public process aspect of rate setting." (*Id*. [emphasis added].) Similarly, Plaintiffs do so again when they argue that "the *In re NYAHSA* plaintiffs' *ultimate* goal

was to extend the substantive protections of the Boren Amendment beyond the Amendment's repeal, i.e., to effectively turn back the clock so as to enforce a federal EEOF standard against the State." (Dkt. No. 60, at 3 [emphasis added].) The Court is unaware of any authority supporting the point of law that whether a claim is a "primary" one or a secondary one, like whether a claim is an "ultimate" one or a collateral one, has any bearing on whether that claim, once heard and decided, is to be afforded the effect of stare decisis. *Cf. EEOC v. Trabucco*, 791 F.2d 1, 4 (1st Cir. 1986) ("We have found no case, nor has appellant cited us to any, that supports its contention that a weak or ineffective presentation in a prior case deprives the ruling of precedential effect.").

In any event, among the six cases consolidated in *In re NYAHSA Litigation*, 318 F. Supp. 2d 30 (N.D.N.Y. 2004), was the case of *N.Y. Ass'n of Homes & Servs. for the Aging, Inc. v. Novello,* 03-CV-1132 (N.D.N.Y.). The complaint in that case alleged as follows, in pertinent part:

> Federal law currently requires that a State plan provide 'for a public process for determination of rates . . . under which . . . proposed rates, the methodologies underlying the establishment of such rates, and justifications for the proposed rates are published.' 42 U.S.C. § 1396a(a)(l3)(A)(i). In addition, 'providers . . . and their representatives' and other concerned state residents must be given 'a reasonable opportunity for review and comment,' and the final rates, methodologies and justifications must be published. 42 U.S.C. § 1396a(a)(l3)(A)(ii)-(iii).

*N.Y. Ass'n of Homes & Servs. for the Aging, Inc. v. Novello,* 03-CV-1132, Complaint, at ¶ 18 (N.D.N.Y. filed Sept. 15, 2003). Based on this factual allegation (among others), the complaint asserted, in pertinent part, the following claim (designated as the "Second Claim"):

> By calculating Medicaid reimbursement rates reflecting the rate reductions for nursing facilities purportedly contained in the 2003 Budget Bill, HCRA 2000, Chapter 57 of the New York Laws of 2000, and the 1995-

> 1999 Budget Bills without having previously complied with . . . the requirements set forth in 42 U.S.C. § 1396a(a)(13)(A) effective October 1, 1997, defendants have violated and continue to violate federal law and federal regulations. Accordingly, the rate reductions and changes to the reimbursement methodology challenged herein are procedurally defective, null and void, and cannot be implemented.

*Id.* at ¶¶ 66-67.

In his Memorandum-Decision and Order of May 19, 2004, United States District Judge David N. Hurd of this District observed that “in [the Boren Amendment’s] stead stands the requirement that a State plan must provide for a public process with respect to its determination of reimbursement rates, including most notably a notice and comment procedure, [i.e.,] current 42 U.S.C. § 1396(a)(13)(A),” pursuant to which “the public [is given] notice of proposed changes in the methodology to determine reimbursement rates . . . .” *In re NYAHSA Litigation*, 318 F. Supp. 2d 30, 32 (N.D.N.Y. 2004). Judge Hurd also observed that

> Plaintiff asserts that the challenged measures were enacted in violation of current 42 U.S.C. § 1396a(a)(13), the successor to the Boren Amendment. That section provides that ‘[a] State plan for medical assistance must . . . provide for a public process for determination of rates of payment under the plan for hospital services, nursing facility services, and services of intermediate care facilities for the mentally retarded under which . . . providers, . . . are given a reasonable opportunity for review and comment on the proposed rates . . . .’

*In re NYAHSA Litigation*, 318 F. Supp. 2d at 38. In considering this claim, Judge Hurd found that

> Through the repeal of the Boren Amendment and the enactment of this section, according to the legislative history, Congress intended to free the states from federal regulation and to eliminate a basis for causes of action by providers to challenge reimbursement rates.

*In re NYAHSA Litigation*, 318 F. Supp. 2d at 38-39 (internal quotation marks omitted).[7] He then concluded that "[t]hus, by replacing the Boren Amendment with a requirement that a state establish a public process by which its rates would be determined, Congress has removed a party's ability to enforce any substantive right." *In re NYAHSA Litigation*, 318 F. Supp. 2d at 39 (internal quotation marks omitted).

Granted, Judge Hurd's express reference to "any substantive right" – and his lack of express reference to any "public process rights" – might lead a hurried reader to infer that his holding extended only to a substantive right to reasonable and adequate Medicaid reimbursement rates, rather than a procedural right to notice and comment. However, one must remember that Judge Hurd rendered the above-stated finding and conclusion when considering the plaintiff's *procedural* claim pursuant to 42 U.S.C. § 1396a(a)(13)(A). *In re NYAHSA Litigation*, 318 F. Supp. 2d at 39. Indeed, after rendering the finding and conclusion, Judge Hurd expressly recognized as "contrary authority" the case of *Am. Soc'y of Consultant Pharmacists v. Concannon*, 214 F. Supp.2d 23, 27-28 (D. Me. 2002). *In re NYAHSA Litigation*, 318 F. Supp. 2d at 39, n.4. In *Am. Soc'y of Consultant Pharmacists v. Concannon*, a district judge concluded that the language of 42 U.S.C. § 1396a(a)(13)(A) supports a private right of action under 42 U.S.C. § 1983, including a reasonable opportunity to comment on changes to the rate of reimbursement. *Am. Soc'y of Consultant Pharmacists v. Concannon*, 214 F. Supp.2d 23, 27-29 (D. Me. 2002). In any event, one must also remember that Judge Hurd granted the defendants'

---

7 Specifically, the legislative history cited by Judge Hurd was H.R. Rep. No. 105-149, at 1230, which stated as follows: "It is the Committee's intention that, following the enactment of [the Balanced Budget Act of 1997], neither this nor any other provision of [§ 1396a] will be interpreted as establishing a cause of action for hospitals and nursing facilities relative to the adequacy of the rates they receive." *In re NYAHSA Litigation*, 318 F. Supp. 2d at 39.

motion for summary judgment in its *entirety* and dismissed *all* of the plaintiffs' federal claims (including the plaintiffs' procedural claim pursuant to 42 U.S.C. § 1396a[a][13][A]). *In re NYAHSA Litigation*, 318 F. Supp. 2d at 42. Finally, one must remember that, in affirming Judge Hurd's decision based on the "well-reasoned" grounds stated therein, the Second Circuit interpreted that decision as holding, among other things, that "health care providers had no enforceable federal rights under § 1396a(a)(13)(A) . . . ," not simply that they had no enforceable *substantive* right. *N.Y. Ass'n of Homes & Servs. for the Aging, Inc. v. DeBuono*, 444 F.3d 147, 148 (2d Cir. 2006) (per curiam). Simply stated, the Court does not share Plaintiffs' confidence that *In re NYAHSA Litigation*, 318 F. Supp. 2d 30 (N.D.N.Y. 2004), is distinguishable. (Dkt. No. 60, at 3.)

Even if a doubt lingered after the Second Circuit's issuance of *N.Y. Ass'n of Homes & Servs. for the Aging, Inc. v. DeBuono*, 444 F.3d 147 (2d Cir. 2006), it appears to have dissipated after the Second Circuit's issuance of *Springfield Hosp. v. Hofmann*, 488 F. App'x 534, 534 (2d Cir. 2012) (summary order),[8] *aff'g*, 09-CV-0254, 2010 WL 3322716 (D. Vt. Apr. 9, 2010).

Plaintiffs argue that *Springfield Hosp. v. Hofmann*, 488 F. App'x 534 (2d Cir. 2012), is distinguishable because the hospital's challenge to Vermont's notice-and-comment obligations under 42 U.S.C. § 1396a(a)(13)(A) was "a back-door substantive challenge to the hospital's rates." (Dkt. No. 60, at 3.) Again, the Court is unaware of any authority supporting the point of law that whether a claim is a "back-door" one or not has any bearing on whether that claim, once heard and decided, is to be afforded the effect of stare decisis.

---

[8] The Court cites this summary order for its persuasive value in accordance with the Advisory Committee Notes to Fed. R. App. P. 32.1.

In any event, the complaint in *Springfield Hosp. v. Hofmann* alleged as follows, in pertinent part:

> Before the SPA can become effective, a state must provide the public with an extensive notice and comment process. . . . The Defendants never provided any justification for, or explanation of, the Besio DSH Payment Methodology. . . . The Defendants did not provide notice and opportunity to comment on the Besio DSH Payment Methodology. . . . The Defendants did not provide notice of the Besio DSH Payment Methodology prior to the effective date of any SPA describing the Besio DSH Payment Methodology.

*Springfield Hosp. v. Hofmann*, 09-CV-0254, Complaint, at ¶¶ 44, 95, 114, 121 (D. Vt. filed Nov. 16, 2009). Based on these factual allegations (among others), the complaint asserted the following two claims, among others: (1) a claim that "[t]he Defendants have violated 42 U.S.C. § 1396a(a)(13), and related federal regulations, including but not limited to 42 C.F.R. § 447.205, by failing to provide notice and comment before implementing the Besio DHS Payment Methodology" (designated "Count I"); and (2) a claim that the Defendant violated 42 U.S.C. § 1983 because "[u]nder 42 U.S.C. § 1396a(a)(13) . . . and related federal regulations, Springfield Hospital has a federal right to notice, comment, and other procedural safeguards before the Defendants can change the DSH payment methodology" (designated "Count III"). *Springfield Hosp. v. Hofmann*, 09-CV-0254, Complaint, at ¶¶ 149, 157 (D. Vt. filed Nov. 16, 2009).

In her Decision and Order of April 9, 2010, United States District Judge Christina Reiss of the District of Vermont expressly considered both of these two claims. *Springfield Hosp. v. Hofmann*, 09-CV-0254, 2010 WL 3322716, at *7 (D. Vt. Apr. 9, 2010) (expressly considering both Counts I and III). In so doing, Judge Reiss found as follows: (1) "[b]y [its] plain language, . . . Section 13(A) . . . [does not] create[] a private cause of action . . . on behalf of health care providers," as required for Count I to state a claim; (2) indeed, "[i]n *In New York Ass'n of Homes*

*& Servs. for the Aging, Inc. v. DeBuono*, 444 F.3d 147 (2d Cir. 2006), the Second Circuit adopted the district court's conclusion that . . . Congress intended to . . . eliminate a basis for causes of action by providers to challenge reimbursement rates"; and (3) "[m]oreover, the Court of the Appeals for the Second Circuit has held [in *DeBuono*] that . . . 42 U.S.C. § 1396a(a)(13)(A) . . . [does not] create federally enforceable rights," as required for Count III to state a claim. *Springfield Hosp.*, 2010 WL 3322716, at *7, 10 (internal quotation marks omitted). As a result, Judge Reiss concluded that "[t]he Second Circuit's *DeBuono* opinion requires dismissal of both the Hospital's statutory and § 1983 claim [sic] under 42 U.S.C. § 1396(a)(13)(A) . . . ." *Springfield Hosp.*, 2010 WL 3322716, at *11.

The plaintiff in *Springfield Hosp.* took an appeal from Judge Reiss's dismissal of Count III (the Section 1983 claim), not her dismissal of Count I (the statutory claim). *Springfield Hosp. v. Hofmann*, No. 11-357-cv, Brief for Plaintiff-Appellant (2d Cir. filed Nov. 15, 2011). In affirming Judge Reiss's dismissal of Count III, the Second Circuit explained as follows:

> As the district court properly found, the Hospital's claims are foreclosed by our decision in *New York Ass'n of Homes and Servs. for the Aging, Inc. v. DeBuono*, 444 F.3d 147 (2d Cir.2006) ('DeBuono'). As established by *DeBuono*, health care providers have no enforceable federal rights under §§ 1396a(a)(13)(A) . . . .

*Springfield Hosp. v. Hofmann*, 488 F. App'x 534, 534 (2d Cir. 2012) (summary order) (internal quotation marks omitted).

Although it is possible that an en banc panel of the Second Circuit might rely on *Medina* and/or *BT Bourbonnais Care, LLC,*[9] in overruling certain aspects of *N.Y. Ass'n of Homes &*

[9] The Court suspects that any reliance by the Second Circuit on *BT Bourboannais Care* would be unlikely in light of the fact that the Seventh Circuit, in finding that Section 1396a(a)(13)(A) created a private right to sue pursuant to Section 1983, applied the standard for

*Servs. for the Aging, Inc. v. DeBuono*, 444 F.3d 147 (2d Cir. 2006), and *Springfield Hosp. v. Hofmann*, 488 F. App'x 534 (2d Cir. 2012), until then, this Court is bound by Second Circuit precedent. *See Packer on behalf of 1-800-Flowers.Com, Inc. v. Raging Cap. Mgmt., LLC*, 105 F.4th 46, 54 (2d Cir. 2024) ("District Courts, by contrast, are obliged to follow our precedent, even if that precedent might be overturned in the near future. Indeed, we have cautioned District Courts against preemptively declaring that our caselaw has been abrogated by intervening Supreme Court decisions.") (internal quotation marks omitted).

As for whether such a change of course by the Second Circuit is likely, the Court answers that question in the negative, because of *Medina*. In *Medina*, the Supreme Court held that the language "[a] State plan for medical assistance must . . . provide that . . . any individual eligible for medical assistance . . . may obtain such assistance from any [provider] qualified to perform the service . . . who undertakes to provide him such services" in 42 U.S.C. § 1396a(a)(23)(A) does not clearly and unambiguously confer an individually enforceable right to sue officials under 42 U.S.C. § 1983 for failing to comply with that any-qualified-provider provision. *Medina*, 606 U.S. at 379-80, 385. In so doing, the Supreme Court found that this language "looks nothing like" the language of the statutory provisions at issue in *Health and Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166 (2023), which "supply the only reliable yardstick

---

assessment of that issue outlined in *Blessing v. Freestone*, 520 U.S. 329 (1997). *See BT Bourbonnais Care*, 866 F.3d at 820-22. Notably, the *Medina* court specifically stated when outlining its updated guidance on making the assessment of whether a spending-power statute confers an individual right that "[t]o the extent lower courts feel obliged, or permitted, to consider the contrary reasoning of *Wilder*, *Wright*, or *Blessing*, they should resist the impulse." *Medina*, 606 U.S. at 376. As a result, Plaintiffs' convoluted argument that the *Medina* court implicitly approved of the result in *BT Bourbonnais Care* because that case relied on the Supreme Court's own decision in *Talevski* in rendering its findings there, and the underlying Seventh Circuit decision in *Talevski* that the Supreme Court affirmed cited *BT Bourbonnais Care*, is not consistent with the reality of what *Medina* actually says.

against which to measure whether spending-power legislation confers a privately enforceable right." *Medina*, 606 U.S. at 359, 377.

In *Talevski*, the Supreme Court addressed two provisions of the Federal Nursing Home Reform Act ("FNHRA"). *Talevski*, 599 U.S. at 171, 180, 184-85. The first provision provided, in pertinent part, that "[a] nursing facility must protect and promote the rights of each resident, including each of the following rights: . . . The right to be free from . . . any physical or chemical restraints imposed for purposes of discipline or convenience and not required to treat the resident's medical symptoms." 42 U.S.C. § 1396r(c)(1)(A)(ii). This first provision appeared in a subparagraph entitled "[s]pecified rights." 42 U.S.C. § 1396r(c)(1)(A). The second provision provided, in pertinent part, that "[a] nursing facility must permit each resident to remain in the facility and must not transfer or discharge the resident from the facility unless" certain criteria are met. 42 U.S.C. § 1396r(c)(2)(A). This second provision appeared in a subparagraph entitled "[t]ransfer and discharge rights." 42 U.S.C. § 1396r(c)(2). Both provisions appeared in a subsection entitled "[r]equirements relating to residents' rights." 42 U.S.C. § 1396r(c)

By contrast, the statutory provision at issue in this case provides, in pertinent part, that "[a] State plan for medical assistance must . . . provide . . . for a public process for determination of rates of payment under the plan . . . nursing facility services . . . under which--(i) proposed rates, the methodologies underlying the establishment of such rates, and justifications for the proposed rates are published, (ii) providers, beneficiaries and their representatives, and other concerned State residents are given a reasonable opportunity for review and comment on the proposed rates, methodologies, and justifications, [and] (iii) final rates, the methodologies underlying the establishment of such rates, and justifications for such final rates are published . . . ." 42 U.S.C. § 1396a(a)(13)(A)(i),(ii).

After comparing these provisions, the Court finds that the provision at issue in this case is more analogous to the provision at issue in *Medina* than the provisions at issue in *Talevski*. The Court notes that conspicuously missing from the provision at issue in this case is any use of the word "right," much less the repeated use of that word in the exemplary statutory structure set forth in *Medina*. *See Medina,* 606 U.S. at 378 (quoting FNHRA's presentation of the "[r]equirements relating to residents' rights," then its presentation of those rights "[g]eneral[ly]," then its presentation of those rights "specifi[cally]"). The Court notes also that, rather than a private cause of action, the remedy for an alleged violation of the provision at issue in this case would appear to be the "typical" such remedy: an "action by the Federal Government to terminate funds to the State." *Medina*, 606 U.S. at 366-367. This is because, "if a State fails 'to comply substantially' with this (or any) congressionally specified condition, the Secretary may withhold some or all of the State's federal funding until he is 'satisfied that there will no longer be any such failure to comply.'" *Medina*, 606 U.S. at 364 (citing 42 U.S.C. § 1396c).

Simply stated, if the Court had been aware of the Second Circuit decisions in *N.Y. Ass'n of Homes & Servs. for the Aging, Inc. v. DeBuono*, 444 F.3d 147 (2d Cir. 2006), and *Springfield Hosp. v. Hofmann*, 488 F. App'x 534 (2d Cir. 2012), when it decided Plaintiffs' motion for a preliminary injunction,[10] the Court would not have found a *likelihood* of success on the merits of Plaintiffs' procedural claim under 42 U.S.C. § 1396a(a)(13)(A) and 42 U.S.C. § 1983. As a result, the Court made a clear mistake of law.

---

[10] Going forward, Plaintiffs' counsel are respectfully requested to err on the side of candor when complying with their duty under N.Y. Rule of Prof'l Conduct R. 3.3(a)(2) ("A lawyer shall not knowingly . . . fail to disclose to the tribunal controlling legal authority known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel . . . .").

**C. Whether the Court Clearly Erred in Denying Plaintiffs Injunctive Relief on Their Equal Protection Claim**

Plaintiffs argue that age (especially the specific age of 40 years) is not a pre-existing difference that may be rationally considered when determining whether there is a rational link between the goal of protecting the public fisc and the criteria applied to differentiate between classes, because all nursing homes, regardless of age, require funding for ongoing capital reimbursement. *See, supra,* Parts I.B.2. and I.B.3. of this Decision and Order. In support of that argument, Plaintiffs rely on (1) the Hearing Testimony of Kevin Wright stating that "it would seem to reason that capital reimbursement would be appropriate" on page 146 of the Hearing Transcript, and (2) the Hearing Testimony of Michael Spitz agreeing that "capital expenditures can be a necessary cost in relation to the provision of Medicaid care for nursing home residents" on page 185 of the Hearing Transcript. (Dkt. No. 60, at 6.)

Granted, the Court acknowledges Mr. Wright's testimony regarding the propriety of capital reimbursement for *all* providers (i.e., including those over 40 years of age). (Dkt. No. 63, at 146 [Hrg. Tr.].) However, this testimony appears to be of little relevance, because it does not state that the need for such capital reimbursement is the *same* for those providers over 40 years of age as it is for those providers under 40 years of age. (*Id.*) The Court also acknowledges Mr. Spitz's testimony that capital expenditures "could be" a necessary cost in relation to the provision of Medicaid care for nursing home residents. (*Id.* at 185.) However, again, this testimony appears to be of little relevance, because it does not state that the necessity of the cost is the *same* for those providers over 40 years of age as it is for those providers under 40 years of age. (*Id.*)

For the sake of brevity, the Court will not hinge its decision on Mr. Spitz's testimony that

"after April of 2020, based on state statute, we have to take into account the useful life of a facility per regulations," and his testimony that "10 NYCRR 86-2.21(a)7 . . . defines useful life of a facility for a period of 40 years measured from the calendar year in which a facility commences operations." (*Id*. at 169; *accord id.* at 26 [Hrg. Testimony of Ralph Zimmerman that "[t]he State of New York has basically said that 40 years is the useful life of a facility"].) *See also* 10 NYCRR 86-2.21(a)(7) ("Useful facility life. The term useful facility life shall mean a period of 40 years measured from the calendar year in which a facility commences operations as determined by the commissioner.").

More relevant, in the Court's view, is Ralph Zimmerman's testimony that "[t]here's a big difference between a facility that's 40 plus years old and a facility that's been built in the last ten years," and that "[t]he more that you find the facility is up-to-date, the better the quality [of care]." (*Id*. at 17, 20.) What is more, not only does the *need* for renovations generally appear to be greater in facilities over 40 years of age but the *cost* of those renovations generally appears to be greater too: as explained by Kimberly Danzig, "It's the original [facilities] from 1969" that need "to be renovated on the inside," which may be difficult because "they may not be able to, based on the age, get parts for that anymore." (*Id*. at 55.)[11]

The Court notes that it is reasonably conceivable that a diminished availability of replacement parts after 40 years is rationally linked to GAAP's 40-year depreciation period for the machines that manufacture those parts. The Court notes also that "[a] classification having some reasonable basis does not offend against [the Equal Protection Clause] merely because it is

11 Similarly relevant is Chelsea Murray's estimate that more than half of for-profit nursing homes are 40 years old or older. (Dkt. No. 63, at 97 [Hrg. Testimony of Chelsea Murray that "I estimate that 66 percent of proprietary facilities have expended [their useful life] or have reached or have passed their 40-year assigned useful life"].)

not made with mathematical nicety, or because in practice it results in some inequality." *Lindsley v. Nat. Carbonic Gas Co.*, 220 U.S. 61, 78 (1911), *cited with approval by City of Dallas v. Stanglin*, 490 U.S. 19, 26 (1989) (holding that a city ordinance restricting admission to certain dance halls to persons between the ages of 14 and 18 was rationally related to legitimate purpose and did not violate Equal Protection Clause). Under the circumstances, the Court finds that sufficient record evidence exists to rationally distinguish between facilities younger than 40 years of age and those 40 years of age or older.

For all of these reasons, the Court grants Defendant's motion for reconsideration, denies Plaintiffs' cross-motion, vacates its Decision and Order of December 30, 2025, and denies Plaintiffs' motion for a preliminary injunction.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion for reconsideration (Dkt. No. 44) is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' cross-motion (Dkt. No. 53) is **DENIED**; and it is further

**ORDERED** that the Court's Decision and Order of December 30, 2025 (Dkt. No. 39) is **VACATED**; and it is further

**ORDERED** that Plaintiffs' motion for preliminary injunction (Dkt. No. 18) is **DENIED**.

Dated: November 4, 2026
Syracuse, New York

Glenn T. Suddaby
U.S. District Judge